**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Norfolk Division)**

| | |
|---|---|
| JOHN R. BULBA and MATTHEW WIRSING, Derivatively on Behalf of Nominal Defendant INSTADOSE PHARMA CORP. (f/k/a MIKROCOZE, INC.), <br><br> Plaintiffs, <br><br> v. <br><br> ED BORKOWSKI, PETER WIRTH, ANN BARNES, TERRY WILSHIRE and ROBERT DICKENSON, <br><br> Defendants, <br><br> and <br><br> INSTADOSE PHARMA CORP. (f/k/a MIKROCOZE, INC.), <br><br> Nominal Defendant. | Civil Action No.: _____ <br><br><br> **VERIFIED STOCKHOLDER** <br> **DERIVATIVE COMPLAINT** <br><br><br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs John R. Bulba and Matthew Wirsing ("Plaintiffs"), by and through their undersigned attorneys, bring this derivative complaint for the benefit of nominal defendant Instadose Pharma Corp. (f/k/a Mikrocoze, Inc.) ("Instadose" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and violations of federal law.  Plaintiffs' allegations are based upon their personal knowledge as to themselves and their own acts, and upon information and belief, developed from the investigation and analysis by Plaintiffs' counsel, including a review of publicly available information, including filings by Instadose with the U.S. Securities

and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by the Company's directors and officers in their management and control of the Company from December 8, 2020 to November 24, 2021 ("Relevant Period").

2.      The Company does not have significant operations and is classified as a "shell" company.  The Company was formerly known as "Mikrocoze, Inc.", which was organized to sell micro-furniture for small spaces via the Internet.  The Company has since pivoted its business to focus on growth and acquisition of pharmaceutical grade agricultural products.

3.      On December 7, 2020, the Company (then still known as Mikrocoze) entered into a non-binding letter of intent with Instadose Pharma Corp., a Canadian-based cannabis producer ("Instadose Canada"), and holders of a majority of its outstanding shares for a transaction to acquire 100% of the outstanding common shares of Instadose Canada in exchange for approximately 80% of the issued and outstanding shares of common stock of the Company following such exchange (the "Business Combination").

4.      Defendants (defined below) made false and/or misleading statements and/or failed to disclose that: (i) the Company had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada; (ii) the Company's internal controls and policies were inadequate to detect and/or prevent impermissible trading activity by control persons of the Company; (iii) the foregoing subjected the Company to a heightened risk of regulatory scrutiny and enforcement action; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On July 9, 2021, the Ontario Securities Commission ("OSC") announced that the Chairman and Chief Executive Officer ("CEO") of Instadose Canada, Grant Ferdinand Sanders ("Sanders")[1], was charged quasi-criminally with one count of fraud in relation to his role as Chairman and CEO of Instadose Canada, which, since July 2017, had raised more than $9.4 million from investors.  The OSC alleged that investor funds were diverted to the benefit of Sanders, his family, and associates, and that Instadose Canada materially misrepresented the nature of its business.

6.      Then, on October 15, 2021, Instadose Canada announced that an overwhelming majority of its shareholders voted in favor of the Business Combination, which remains subject to customary closing conditions, including approval by a Canadian court.  Following completion of the Business Combination, the Company expected that its Board of Directors would consist of, among others, Sanders.

7.      Then, on November 24, 2021, in a filing with the SEC, the Company disclosed that: "[o]n November 23, 2021, the Company was notified by the SEC that it had ordered, pursuant to Section 12(k) of the [Exchange Act], that trading in the securities of [the Company] is suspended for the period from 9:30 a.m. EDT on November 24, 2021, through 11:59 p.m. EDT on December 8, 2021."  The Company advised investors that the SEC's order specifically stated that: "it appears to the [SEC] that the public interest and the protection of investors require a suspension in the trading of [Instadose] securities . . . because of questions and concerns regarding the adequacy and accuracy of information about Instadose . . . in the marketplace, including: (1) significant increases in the stock price and share volume unsupported by the

---

[1]      On January 14, 2022, Sanders resigned as Chief Executive Officer and as Chairman of Instadose Canada.

3

company's assets and financial information; (2) trading that may be associated with individuals related to a control person of Instadose . . .; and (3) the operations of Instadose[]'s Canadian affiliate."

8.  On this news, and after the Company's common stock began publicly trading again on December 9, 2021, the Company's stock price fell $22.61 per share, or 91.87%, to close at $2.00 per share on December 9, 2021.

## JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under Section 10(b) of the Exchange Act (15. U.S.C. § 78j(b)), and Section 21D of the Exchange Act (15 U.S.C. § 78u 4(f)).

10.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

11.  This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

12.  Venue is proper in this District and Division because many of the alleged misstatements and wrongs complained of herein occurred in this District and Division, Defendants have conducted business in this District and Division, and Defendants' actions have had an effect in this District and Division.

## PARTIES

**Plaintiffs**

13.  Plaintiff John R. Bulba purchased shares of Instadose stock during the Relevant Period and continues to hold his Instadose stock currently.

14.  Plaintiff Matthew Wirsing purchased shares of Instadose stock during the

Relevant Period and continues to hold his Instadose stock currently.

**Nominal Defendant**

15.     Nominal Defendant Instadose is a Nevada corporation with its principal executive offices located at 1545 Crossways Boulevard, Suite 250, Chesapeake, Virginia 23320-0210.

**Defendants**

16.     ***Defendant Terry Wilshire*** ("Wilshire") has served as Instadose's President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, and a Director of the Company at all relevant times.

17.     ***Defendant Ed Borkowski*** ("Borkowski") is a director of the Company.

18.     ***Defendant Peter Wirth*** ("Wirth") is a director of the Company.

19.     ***Defendant Ann Barnes*** ("Barnes") is a director of the Company.

20.     ***Defendant Robert Dickenson*** ("Dickenson") is a director of the Company.

21.     Defendants Wilshire, Borkowski, Wirth, Barnes and Dickenson are collectively referred to herein as "Defendants".

22.     Importantly, the Company has not formed an Audit Committee, Compensation Committee or Nominating and Corporate Governance Committee as of the filing of its Annual Report on February 25, 2021.  According to the Annual Report, the Board performs the principal functions of an Audit Committee.  Moreover, according to the Annual Report, the Company does not have an audit committee financial expert on its Board.

## FALSE AND MISLEADING STATEMENTS

**Background**

23.     On November 6, 2020, the Company, then still known as Mikrocoze, reported that on October 9, 2020, Sukhmanjit Singh ("Singh"), then the Company's CEO, Chief Financial

Officer, President, Treasurer, and Secretary, and Director of the Company, had resigned effective immediately.   Following Singh's resignation, the Company became heavily involved with Instadose Canada.

24.   For instance, in the same disclosure regarding Singh's resignation, the Company reported that Defendant Wilshire, a purported award-winning risk and fraud mitigation manager "currently responsible for Global Risk assessment and Corporate Social Responsibility at Instadose Pharm Corp." -- *i.e.*, most likely, Instadose Canada -- had consented to act as the new President and Member of the Board of the Company.

25.   Approximately a month later, on December 7, 2020, the Company reported its intention to acquire 100% of the outstanding common shares of Instadose Canada. Then, on March 11, 2021, Mikrocoze changed its name to "Instadose Pharma Corp." and its trading symbol to "INSD" while pivoting its business to focus on growth and acquisition of pharmaceutical grade agricultural products—*i.e.*, Instadose Canada's focus.

26.   On December 8, 2020, Defendants caused the Company to file a current report on Form 8-K with the SEC, reporting its intention to acquire 100% of the outstanding common shares of Instadose Canada, and stating:

> On December 7, 2020, Mikrocoze . . . entered into a non-binding letter of intent (the "Letter of Intent") with Instadose [Canada] . . . and holders of a majority of its outstanding shares (the "Shareholders") for a potential transaction pursuant to which the Company would acquire 100% of the outstanding common shares of Instadose [Canada] (the "Acquisition") from the Shareholders in exchange for approximately 80% of the issued and outstanding shares of common stock of the Company following such exchange.
>
> The parties intend that the closing of the Acquisition occur no later than 90 days after the execution of the definitive transaction documents (the "Definitive Documents"), subject to extension by the parties. Closing of the Acquisition would be subject to a number of conditions, including but not limited to, approval of the Acquisition by the shareholders of the Company and Instadose [Canada],

obtaining necessary third-party approvals, and no material adverse change occurring in the Company or Instadose [Canada].

The parties have agreed to an exclusivity period of ninety (90) days from the date of the Letter of Intent, during which negotiations leading to the execution of Definitive Agreement shall be undertaken in good faith and in a mutually exclusive manner and that neither party will circumvent the other during such negotiations.

27.     On February 25, 2021, Defendants caused the Company to file an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fourth quarter and fiscal year ended November 30, 2020 (the "2020 Form 10-K"). The 2020 Form 10-K contained substantively the same statements as referenced above regarding the Company's intention to acquire 100% of the outstanding common shares of Instadose Canada.

28.     In its section regarding related party transactions, the 2020 Form 10-K only advised that "[d]uring the period ended November 30, 2020, an entity controlled by the former CEO paid expenses of $26,091 on behalf of the Company and advanced the Company $330"; that "[t]he total amount owed to the former CEO, or entities controlled by the former CEO, as of November 30, 2020 was $82,085 (November 30, 2019 - $55,664)"; and that "[t]he amounts due to related parties are unsecured and non-interest-bearing with no set terms of repayment."

29.     The 2020 Form 10-K also stated: "[t]here are no off-balance sheet arrangements currently contemplated by management or in place that are reasonably likely to have a current or future effect on the business, financial condition, changes in financial condition, revenue or expenses, result of operations, liquidity, capital expenditures and/or capital resources."

30.     Appended as an exhibit to the 2020 Form 10-K was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendant Wilshire certified that "the [2020 Form 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the

[Exchange Act]" and that "the information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of Mikrocoze[.]"

31.     On April 14, 2021, Defendants caused the Company to file a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended February 28, 2021 (the "1Q21 10-Q").  The 1Q21 10-Q contained substantively the same statements as referenced in ¶ 26, regarding the Company's intention to acquire 100% of the outstanding common shares of Instadose Canada, while noting that "[b]oth parties have agreed to verbally extend the time [for the agreement] in order to complete the audit of the seller."

32.     In its section regarding related party transactions, the 1Q21 10-Q only reported that "[d]uring the period ended February 28, 2021, the CEO paid expenses of $11,355 on behalf of the Company"; that "[t]he total amount owed to the CEO as of February 28, 2021, was $11,355 (November 30, 2020 - $82,085- owed to the previous CEO)"; that "[t]he amounts due to related parties are unsecured and non-interest-bearing with no set terms of repayment"; that "[o]n February 28, 2021, the former CEO of the Company forgave all related party loans to the Company totaling $82,085"; and that "[t]his was reflected as an increase in Additional-Paid-In-Capital in the financial statements."

33.     The 1Q21 10-Q also stated that, other than a situation described in its section regarding liquidity and capital resources—namely, certain "cash advances from our sole Officer and Director," "cash received in our initial offering," and a verbal commitment from Defendant Wilshire "to continue to fund our operations up to $75,000[,]" which "is not in writing and maybe [sic] rescinded at any time"—"the company has no off-balance sheet arrangements that have or are reasonably likely to have a current or future effect or change on the company's

financial condition, revenues or expenses, results of operations, liquidity, capital expenditures or capital resources that are material to investors."

34.    Appended as an exhibit to the 1Q21 10-Q was substantively the same SOX certification as referenced above, which was signed by Defendant Wilshire.

35.    On July 9, 2021, the OSC announced that the Chairman and CEO of Instadose Canada, Sanders, was charged quasi-criminally with one count of fraud in relation to his role as Chairman and CEO of Instadose Canada, which, since July 2017, had raised more than $9.4 million from investors.  The OSC alleged that investor funds were diverted to the benefit of Sanders, his family, and associates, and that Instadose Canada materially misrepresented the nature of its business.

36.    On July 14, 2021, the Company filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended May 31, 2021 (the "2Q21 10-Q").  The 2Q21 10-Q contained substantively the same statements as referenced above regarding the Company's intention to acquire 100% of the outstanding common shares of Instadose Canada, while noting that "[t]he anticipated consummation of the contemplated transaction is July 31, 2021."

37.    In its section regarding related party transactions, the 2Q21 10-Q only reported that "[d]uring the period ended May 31, 2021, the CEO paid expenses of $33,930 on behalf of the Company"; that "[t]he total amount owed to the CEO as of May 31, 2021, was $51,130, which includes $17,200 in accrued management fees (November 30, 2020 - $82,085- owed by the previous CEO)"; that "[t]he amounts due to related parties are unsecured and non-interest-bearing with no set terms of repayment"; that "[o]n February 28, 2021, the former CEO of the Company forgave all related party loans to the Company totaling $82,085"; that "[t]his was

reflected as an increase in Additional-Paid-In-Capital in the financial statements"; and that the Company had entered into an executive employment agreement with Defendant Wilshire, while detailing the terms of that employment agreement.

38.     The 2Q21 10-Q also contained substantively the same statements as referenced above regarding the Company's off-balance sheet arrangements, while also providing the following details regarding its evolving liquidity and capital resources situation:

> As of May 31, 2021, we had $5 in cash and $51,130 due to a related party. As of November 30, 2020, we had 65 in cash, and $82,085 due to a related party, the former president/director of the Company. Total liabilities as of May 31, 2021, were $60,409 compared to $82,423 at November 30, 2020.  The funds available to the Company will not be sufficient to fund the planned operations of the Company and maintain a reporting status. As of May 31, 2021, the Company owed $51,130, which includes $17,200 in accrued management fees. (November 30, 2020; $82,085 owed to the previous CEO of the Company) to its current Chief Executive Officer.  During the six-month period ended May 31, 2021 and May 31, 2020, the CEO, paid expenses of $33,930 and $9,410, respectively, on behalf of the Company. All amounts due to the related party are unsecured, non-interest bearing and have no set terms of repayment.

39.     Appended as an exhibit to the 2Q21 10-Q was substantively the same SOX certification as referenced above signed by Defendant Wilshire.

40.     On September 22, 2021, Defendants caused the Company to file a current report on Form 8-K with the SEC, signed by Defendant Wilshire, providing an update on the contemplated transaction with Instadose Canada (the "September 2021 8-K").  The September 2021 8-K stated that "[o]n September 1, 2021, Instadose . . . entered into a plan of arrangement (the 'Agreement') with [Instadose Canada,]" and that "[u]pon the satisfaction of the conditions set forth in the Agreement, the Company will acquire all of the issued and outstanding shares of common stock (the 'Shares') of Instadose[ Canada,]" with "[t]he consideration to be paid for each Share [to] be 1.34 shares of common stock of the Company."

41.     The September 2021 8-K also highlighted the business operations of Instadose Canada, indicating to investors the purported benefits that would flow to the Company following consummation of the Business Combination:

> [Canadian] Instadose is building a large-scale commercial outdoor growing, cultivation, production, and global distribution platform (the "Global Distribution Platform") for medicinal cannabis and cannabinoid oil. Utilizing the Global Distribution Platform, Instadose [Canada] will be seeking to open the commercial gateway to a new wholesale marketplace capable of providing pharmaceutical industry companies with large, sustainable, consistent, diverse, and low-cost supplies of high-quality medicinal cannabis and cannabinoid oil for use in bulk as an active pharmaceutical ingredient. Instadose [Canada]'s Global Distribution Platform spans five (5) world continents to date, including Africa, Europe, Asia, South America, and North America (each, a "Continent"). Within each Continent, Instadose [Canada] is establishing operational subsidiaries and joint venture partnerships to secure access to government-issued licenses and permits in countries such as The Democratic Republic of the Congo, the Republic of North Macedonia, the Portuguese Republic, the Republic of India, Colombia, Mexico, and Canada, each seeking to increase their level of participation within the global Medicinal Cannabis industry. Upon consummation of the transaction, the Company will no longer be considered a "shell" company.

42.     On October 13, 2021, Defendants caused the Company to file a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended August 31, 2021 (the "3Q21 10-Q"). That filing contained substantively the same statements as referenced above, providing an update on the contemplated Business Combination, and indicating to investors the purported benefits that would flow to the Company following consummation of the Business Combination.

43.     In its section regarding related party transactions, the 3Q1 10-Q only advised that "[d]uring the period ended August 31, 2021, the CEO paid expenses of $45,974 on behalf of the Company"; that "[t]he total amount owed to the CEO as of August 31, 2021, was $88,974 (November 30, 2020 - $82,085 - owed by the previous CEO), which includes $43,000 in accrued management fees"; that "[t]he amounts due to related parties are unsecured and non-interest

11

bearing with no set terms of repayment"; that "[o]n February 28, 2021, the former CEO of the Company forgave all related party loans to the Company totaling $82,085"; that "[t]his was reflected as an increase in Additional-Paid-In-Capital in the financial statements"; and that the Company had entered into an executive employment agreement with Defendant Wilshire, while detailing the terms of that employment agreement.

44.     The 3Q21 10-Q also contained substantively the same statements as referenced above, regarding the Company's off-balance sheet arrangements, while also providing the following details regarding its evolving liquidity and capital resources situation:

> As of August 31, 2021, we had $nil in cash and $88,974 due to a related party. As of November 30, 2020, we had 65 in cash, and $82,085 due to a related party, the former president/director of the Company.  Total liabilities as of August 31, 2021, were $113,233 compared to $82,423 at November 30, 2020. The funds available to the Company will not be sufficient to fund the planned operations of the Company and maintain a reporting status. As of August 31, 2021, the Company owed $88,974 (November 30, 2020; $82,085 owed to the previous CEO of the Company) to its current Chief Executive Officer. During the nine-month period ended August 31, 2021 and 2020, the CEO paid expenses of $45,974 (and accrued management fees of $43,000) and $9,410, respectively, on behalf of the Company. All amounts due to the related party are unsecured, non-interest bearing and have no set terms of repayment.

45.     Additionally, the 3Q21 10-Q stated that "[d]uring the period the Company agreed to sell 1,000 shares of the Company's common stock at $1.00 per share to 10 shareholders" and "[n]o cash was received and shares were issued subsequent to the period"; that "[s]ubsequent to the period the Company agreed to sell an additional 200 shares of the Company's common stock at $1.00 per share to 2 shareholders"; and that "[t]he $1,200 in cash was received for all 10 shareholders during the period and 2 shareholders from subsequent period and all 1,200 shares were issued subsequent to the period."

46.     Appended as an exhibit to the 3Q21 10-Q was substantively the same SOX certification as referenced above, signed by Defendant Wilshire.

47.    On October 15, 2021, Instadose Canada announced that an overwhelming majority of its shareholders voted in favor of the Business Combination, which remains subject to customary closing conditions, including approval of a Canadian court.  Following completion of the Business Combination, the Company expected that its Board of Directors would consist of, among others, Sanders.

48.    On October 21, 2021, Defendants caused the Company to file a current report on Form 8-K with the SEC, signed by Defendant Wilshire, providing an update on the contemplated transaction with Instadose Canada. That filing stated, in relevant part:

> On October 19, 2021, Instadose [Canada] applied to the Supreme Court of British Columbia (the "Court") in connection with a proposed plan of arrangement (the "Plan of Arrangement") giving effect to an arrangement (the "Arrangement") under section 288 of the Business Corporations Act (British Columbia), S.B.C. 2002, c.57, as amended, (the "BCBCA") involving the Petitioner, its shareholders and Instadose Pharma Corp. (formerly Mikrocoze Inc.) ("MZKR"). Instadose Canada received a Final Order which provided for, among others, (i) pursuant to Section 291 (4)(c) of the BCBCA the Arrangement as provided for in the Plan of Arrangement, including the terms and conditions thereof and the distributions, issuances, exchanges and/or adjustments of securities contemplated therein or in connection therewith, is procedurally and substantively fair and reasonable to the Instadose Shareholders; and (ii) pursuant to section 291(4)(a) of the BCBCA, the Arrangement as provided for in the Plan of Arrangements including the terms and conditions thereof and the distributions, issuances, exchanges, and/or adjustments of securities contemplated therein or in connection therewith, be and was hereby approved by the Court. Closing of the Arrangement is expected to occur on or about November 15, 2021.

49.    The statements referenced in ¶¶ 25-48 were false and/or misleading and/or failed to disclose that: (i) the Company had performed inadequate due diligence into the Business Combination and/or ignored significant red flags associated with Instadose Canada; (ii) the Company's internal controls and policies were inadequate to detect and/or prevent impermissible trading activity by control persons of the Company; and (iii) the foregoing subjected the Company to a heightened risk of regulatory scrutiny and enforcement action.

## THE TRUTH EMERGES

50.     On November 24, 2021, the Company filed a current report on Form 8-K with the SEC, disclosing that the SEC had ordered the suspension of trading of the Company's securities because of various issues with its business, trading activity, and Canadian affiliate.  Appended as an exhibit to that filing was the SEC's Order of Suspension of Trading, dated November 23, 2021:

> It appears to the [SEC] that the public interest and the protection of investors require a suspension in the trading of the securities of Instadose. . . because of questions and concerns regarding the adequacy and accuracy of information about Instadose . . . in the marketplace, including: (1) significant increases in the stock price and share volume unsupported by the company's assets and financial information; (2) trading that may be associated with individuals related to a control person of Instadose . . .; and (3) the operations of Instadose[]'s Canadian affiliate . . . .

> The [SEC] is of the opinion that the public interest and the protection of investors require a suspension of trading in the securities of the above-listed company.

> THEREFORE, IT IS ORDERED . . . that trading in the securities of the . . . Company is suspended for the period from 9:30 a.m. EST on November 24, 2021, through 11:59 p.m. EST on December 8, 2021.

51.     On this news, on December 9, 2021, the Company's stock price fell $22.61 per share, or 91.87%, to close at $2.00 per share.

## DUTIES OF DEFENDANTS

52.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, Defendants owed the Company and its investors the fiduciary obligations of trust, loyalty, and good faith. The obligations required Defendants to use their utmost abilities to control and manage the Company in an honest and lawful manner.  Defendants were and are required to act in furtherance of the best interests of the Company and its investors.

53.     Each director of the Company owes to the Company and its investors the fiduciary duty to exercise loyalty, good faith, and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.  In addition, as officers and/or directors of a publicly held company, Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, and financial condition, as well as present and future business prospects, so that the market price of the Company's stock would be based on truthful and accurate information.

54.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)      remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)      ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)      ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

55.    Each Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

56.    Defendants breached their duties of loyalty and good faith by causing the Company to issue false and misleading statements concerning the business results and prospects of the Company. As a result, the Company has expended, and will continue to expend, significant sums of money related to investigations and lawsuits.

## <u>DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS</u>

57.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by Defendants.

58.     Plaintiffs will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

59.     During the illegal and wrongful course of conduct at the Company and to the present, the Board consisted of Defendants Wilshire, Borkowski, Wirth, Barnes and Dickenson. Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

60.     Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

61.     Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.   For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiffs have not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

62.     Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

63.     Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

64.     Additionally, Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

### *Defendant Wilshire*

65.     Because of his CEO and President position with the Company, Defendant Wilshire is not independent.

66.     Defendant Wilshire was responsible for most of the false and misleading statements and omissions that were made, including those contained in the Company's SEC filings referenced herein, many of which he either personally made or signed off on.

67.     Defendant Wilshire is also a Defendant in the securities class action entitled *DeLuca v. Instadose, Pharma Corp. et al.*, Case 2:21-cv-00675 (the "Securities Class Action") and faces a substantial likelihood of liability; therefore, demand on Defendant Wilshire is futile.

### Defendants Borkowski, Barnes and Wirth

68.     As of December 31, 2021, Defendants Borkowski, Barnes and Wirth were directors of Instadose Canada.

69.     Defendant Borkowski and Instadose Canada entered into an employment agreement to serve Instadose Canada as its Chief Executive Officer following the completion of the Plan of Arrangement.

70.     Demand on Defendants Borkowski, Barnes and Wirth is futile because there were significant red flags associated with business combination with Instadose Canada, which they were directors of.

**All of the Defendants**

71.     The Company has not formed an Audit Committee, Compensation Committee or Nominating and Corporate Governance Committee as of the filing of its Annual Report on February 25, 2021.  According to the Annual Report, the Board performs the principal functions of an Audit Committee.  Moreover, according to the Annal Report, the Company does not have an audit committee financial expert on its Board.

72.     According to the facts above, there were no internal controls in place.  The whole Board performed the principal functions of the Audit Committee.  The Board failed to perform these duties.  Therefore, Demand on the Board is futile.

**COUNT I**
**(Against Defendants For Breach Of Fiduciary Duty)**

73.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

74.     Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

75.     Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

76.     Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful

dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other public disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

77.    As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

78.    As a direct and proximate result of Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending and/or settling securities lawsuit, severe damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT II
### (Against Defendants For Waste Of Corporate Assets)

79.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

80.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

81.    As a result of the misconduct described above, Defendants wasted corporate assets by, *inter alia*: (a) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (b) awarding self-interested stock options to certain officers and

directors; and (c) incurring potentially millions of dollars of legal liability and/or legal costs to defend and/or settle actions addressing Defendants' unlawful actions.

82.     As a result of the waste of corporate assets, Defendants are liable to the Company.

83.     Plaintiffs, on behalf of the Company, have no adequate remedy at law.

**COUNT III**
**(Against Defendants for Unjust Enrichment)**

84.     Plaintiffs incorporates by reference and reallege each and every allegation set forth above, as though fully set forth herein.

85.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, Defendants were unjustly enriched at the expense of, and the detriment of, Instadose.

86.     Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Instadose that was tied to the performance or artificially inflated valuation of Instadose or received compensation or other payments that were unjust in light of Defendants' bad faith conduct.

87.     Plaintiffs, as shareholders and representatives of Instadose, seek restitution from Defendants and seek an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

88.     Plaintiffs, on behalf of the Company, have no adequate remedy at law.

**COUNT IV**
**(Against Defendants for Abuse of Control)**

89.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

90.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Instadose, for which they are legally responsible.

91.     As a direct and proximate result of Defendants' abuse of control, Instadose has sustained significant damages. As a result of the misconduct alleged herein, Defendants are liable to the Company.

**COUNT V**
**(Against Defendant Wilshire for Contribution**
**Under Sections 10(b) and 21D of the Exchange Act)**

92.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

93.     The Company and Defendant Wilshire are named as defendants in the Securities Class Action, which assert claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.  If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendant Wilshire's willful and/or reckless violations of his obligations as an officer and/or director of Instadose.

94.     Defendant Wilshire, because of his positions of control and authority as President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, and a Director of Instadose, respectively, was able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Instadose, including the wrongful acts complained of herein and in the Securities Class Action.

95.     Accordingly, Defendant Wilshire is liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

96.     As such, the Company is entitled to receive all appropriate contribution or indemnification from Defendant Wilshire.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C.     Awarding to the Company restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

D.     Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated: February 11, 2022

**WILLIAMS & SKILLING, P.C.**

By: */s/ Charles L. Williams*
Charles L. Williams (VSB No. 23587)
7104 Mechanicsville Turnpike, Suite 204
Mechanicsville, VA 23111
Telephone: (804) 447-0307
Facsimile: (804) 447-0367
Email: cwilliams@williamsandskilling.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna (*pro hac vice* to be applied for)
Gregory M. Egleston (*pro hac vice* to be applied for)
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiffs*